# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF DELAWARE

RONALD F. BROOKS,          )
                           )
             Petitioner,   )
                           )
      v.                   )   Civil Action No. 12-466-GMS
                           )
DAVID PIERCE, Warden, and  )
ATTORNEY GENERAL OF        )
THE STATE OF DELAWARE,     )
                           )
             Respondents.[1] )

---

Ronald F. Brooks. *Pro se* petitioner.

Karen V. Sullivan, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

---

## MEMORANDUM OPINION

_Sept 30_____, 2015
Wilmington, Delaware

---

[1]Warden David Pierce has replaced former Warden Perry Phelps, and original party to this case. *See* Fed. R. Civ. P. 25(d).

Sleet, District Judge

Pending before the court is a petition for a writ of habeas corpus pursuant to 28 U.S.C.

§ 2254 filed by petitioner Ronald F. Brooks ("Brooks"). (D.I. 2) For the reasons discussed, the

court will deny the petition.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

> Following an investigation, the police obtained a warrant to search a townhouse located
> at 1 Ravine Place, and a Chevrolet Lumina. The warrant was executed on August 16,
> 2005, shortly after 6:00 a.m. The townhouse was leased by Brooks and his girlfriend,
> Rose Epps, ("Epps"), both of whom were present at the time of the search. The Lumina,
> which was registered to Epps, was parked outside the townhouse. Inside the residence,
> the police recovered marijuana in a man's sneaker in the hallway closet; a 9 mm
> magazine in the kitchen; and a box containing .40 caliber ammunition in the kitchen
> drawer. More ammunition in loaded magazines was found in a plastic bag concealed
> under a bush outside the front door. Inside the trunk of the Lumina, the police discovered
> a digital scale, a tan and black "cow print" bag containing approximately 350 grams of
> crack cocaine, and four handguns.

*Brooks v. State*, 929 A.2d 783 (Table), 2007 WL 1470649, at *1 (Del. May 22, 2007).

In September 2005, Brooks was indicted on the following charges: trafficking in cocaine,

four counts of possession of a firearm during the commission of a felony, possession with intent

to deliver a narcotic schedule II controlled substance, possession of a controlled substance within

1000 feet of a school, second degree conspiracy, possession of drug paraphernalia, four counts of

possession of a deadly weapon by a person prohibited, possession of ammunition by a person

prohibited, maintaining a dwelling, and maintaining a vehicle. (D.I. 13 at 1) Prior to jury

selection on March 28, 2006, the State entered a *nolle prosequi* on the charges of maintaining a

dwelling and possession of a controlled substance within 1000 feet of a school. *Id.*

The following witnesses testified at trial: Officer Michael Santos, who had conducted

surveillance of 1 Ravine Place and saw Brooks driving the Lumina; Epps, who lived with

Brooks; Detective Kevin Murphy, who found Brooks' fingerprints on the trunk of the Lumina;

and Joseph Tomchick, who sold the gun to Brooks in exchange for money and cocaine. *See Brooks*, 2007 WL 1470649, at *1. On March 30, 2006, a Superior Court jury found Brooks guilty of all remaining offenses. On September 1, 2006, the Superior Court sentenced Brooks as a habitual offender to the minimum mandatory 148 years in prison. *Id.* The Delaware Supreme Court affirmed Brooks' convictions and sentences. *Id.*

In May, 2008, Brooks filed a counseled motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61 ("Rule 61 motion"). *See State v. Brooks*, 2008 WL 3485720 (Del. Super. Ct. July 10, 2008). The Superior Court summarily denied the Rule 61 motion, Brooks appealed, and the Delaware Supreme Court remanded the case to allow Brooks to expand his allegations of ineffective assistance of counsel and for appointment of counsel. *See State v. Brooks*, 2011 WL 494770, at *1 (Del. Super. Ct. Feb. 3, 2011), *rev'd in part by Brooks v. State*, 40 A.3d 346, 348 (Del. 2012). The Superior Court appointed counsel. *Brooks,* 2011 WL 494770, at *1. After considering the additional briefs and Rule 61 affidavits provided, the Superior Court again denied the Rule 61 motion. *Id.* at *12.

On return from remand, the parties submitted supplemental memoranda and the Delaware Supreme Court held oral argument. (D.I. 13 at 2) The Delaware Supreme Court then consolidated Brooks' case with another for consideration of the issue of the jury instruction regarding accomplice testimony, ordered supplemental memoranda, and heard oral argument en banc. *See Brooks*, 40 A.3d at 348. The Delaware Supreme Court affirmed the judgment of the Superior Court as to all charges except second degree conspiracy, which it reversed and remanded on February 23, 2012. *Id.* at 355. On second remand to the Superior Court, the State entered a *nolle prosequi* on the second degree conspiracy charge and the Superior Court entered

2

a modified sentencing order omitting the sentence for second degree conspiracy. (D.I. 15, Del. Super. Ct. Crim. Dkt. Entry Nos. 108-113)

## II.    GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206 (2003). Pursuant to AEDPA, a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

### B. Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>     (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

3

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to give "state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding, in a procedural manner permitting the court to consider the claims on their merits. *Bell*, 543 U.S. at 451 n.3; *Castille v. Peoples,* 489 U.S. 346, 351 (1989).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Although treated as technically exhausted, such claims are nonetheless procedurally defaulted. *Lines,* 208 F.3d at 160; *Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Similarly, if a petitioner presents a habeas claim to the state's highest court, but that court "clearly and expressly" refuses to review the merits of the claim due to an independent and adequate state procedural rule, the claim is exhausted but procedurally defaulted. *See Coleman*, 501 U.S. at 750; *Harris v. Reed*, 489 U.S. 255, 260-64 (1989).

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman,* 501 U.S. at 750-51.

4

To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488 (1986). To demonstrate actual prejudice, a petitioner must show "that [the errors at trial] worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States,* 523 U.S. 614, 623 (1998). In order to establish actual innocence, the petitioner must present new reliable evidence – not presented at trial – that demonstrates "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 537-38 (2005); *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

## C. Standard of Review

When a state's highest court has adjudicated a federal habeas claim on the merits, the federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d).[2] Pursuant to 28 U.S.C. § 2254(d), federal habeas relief may only be granted if the state court's decision was "contrary to, or involved an unreasonable application of, clearly

---

[2] A claim has been "adjudicated on the merits" for the purposes of 28 U.S.C. § 2254(d) if the state court decision finally resolves the claim on the basis of its substance, rather than on a procedural or some other ground. *Thomas v. Horn,* 570 F.3d 105, 115 (3d Cir. 2009).

5

established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *see also Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). This deferential standard of § 2254(d) applies even "when a state court's order is unaccompanied by an opinion explaining the reasons relief has been denied." *Harrington v. Richter*, 562 U.S. 86, 98-100 (2011). As recently explained by the Supreme Court, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.*

Finally, when reviewing a claim under § 2254(d), a federal court must presume that the state court's determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Appel*, 250 F.3d at 210. This presumption of correctness applies to both explicit and implicit findings of fact, and is only rebutted by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000); *Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). The Supreme Court has "not defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)." *Burt v. Titlow*, 134 S.Ct. 10, 15 (2013); *but see Miller-El v. Cockrell*, 537 U.S. 322, 341 (2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## III. DISCUSSION

Brooks' timely filed petition asserts the following eleven grounds for relief: (1) there was insufficient evidence to support his convictions; (2) the prosecutor engaged in misconduct

6

by using the word "I" in his opening statement, by eliciting testimony that Brooks was a target, and by referring to Brooks as a "drug dealer" during closing argument; (3) the trial court infringed upon Brooks' right to testify by not issuing a pre-trial decision on Brooks' motion to suppress his allegedly involuntary police statement; (4) the trial court erred by declaring Brooks an habitual offender; (5) defense counsel was ineffective for failing to seek supplemental *voir dire* of Juror No. 3 after Juror No. 1 was excused; (6) defense counsel was ineffective for failing to present a defense case; (7) defense counsel was ineffective for failing to investigate fingerprint evidence and failing to file a *DeBerry* motion regarding the fingerprints in the Lumina that did not belong to Brooks; (8) defense counsel was ineffective for failing to file a motion pursuant to *State v. Flowers*, 316 A.2d 564 (Del. 1973) ("*Flowers* motion") to determine the identity and veracity of the confidential informant; (9) defense counsel was ineffective for failing to request a *Bland* jury instruction that accomplice testimony should be viewed with great suspicion and caution; (10) the jury instructions with respect to the word "possession" were confusing and misleading, and defense counsel was ineffective for failing to seek clearer jury instructions; and (11) the cumulative effect of all of these errors warrants habeas relief.

## A. Claim One: Insufficient Evidence

In claim one, Brook contends that there was insufficient evidence to support his convictions for second degree conspiracy and four counts of possession of a firearm during the commission of a felony. The court will not address Brooks' argument that there was insufficient evidence to support his conviction for second degree conspiracy, because the Delaware Supreme Court's reversal of that conviction on other grounds, which resulted in the State entering a *nolle prosequi* and the Superior Court entering a modified sentencing order omitting the sentence for

7

second degree conspiracy, renders this portion of claim one moot.[3]  However, the court will review Brooks' insufficient evidence claim with respect to his conviction for possession of a firearm during the commission of felony under § 2254(d)(1), because the Delaware Supreme Court denied that claim as meritless on direct appeal.

The United States Supreme Court precedent governing the instant insufficient evidence claim is *Jackson v. Virginia*, 443 U.S. 307 (1979).  Pursuant to *Jackson*, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319.  This standard "must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n.16.  Additionally, "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.  However, it is not necessary that the evidence exclude every reasonable hypothesis except that of guilt. *Id.* When reviewing a habeas application "alleging an unconstitutional conviction due to insufficient evidence, federal courts do not review the reasoning underlying the state court's decision. Instead, we focus on whether the state court's ultimate decision – affirmation of the conviction – was supported by sufficient record evidence." *Rodriguez v. Rozum*, 535 F. App'x 125, 130-31 (3d Cir. 2013).  A jury's verdict may be based entirely on circumstantial evidence, so long as the Jackson standard is satisfied and the jury is convinced of the defendant's guilt beyond a

---

[3]The memorandum Brooks has filed to support claim one appears to be a memorandum that was filed during his Rule 61 proceeding, and he has not "altered" his arguments to reflect the fact that his conviction for second degree conspiracy was reversed on post-conviction appeal.

reasonable doubt. *See Desert Palace Inc. v. Costa*, 539 U.S. 90, 100 (2003); *Holland v. United States*, 348 U.S. 121, 140 (1954).

Turning to the § 2254(d)(1) inquiry, the court notes that a state court's decision is "contrary to" clearly established law under § 2254(d)(1) if "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases . . . or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that precedent]." *Williams*, 529 U.S. at 405. The governing sufficiency of the evidence standard in Delaware is identical to the standard articulated in *Jackson. See Hardin v. State,* 844 A.2d 982, 990 (Del. 2004). In this case, the Delaware Supreme Court cited that precedent when it held on direct appeal that, "[v]iewed in the light most favorable to the State, there was sufficient evidence from which the jury could find that, at the time Brooks committed the felony offenses charged, the guns were within his immediate reach and, therefore, were readily accessible." *See Brooks*, 2007 WL 1470649, at *2. Therefore, the court concludes that the Delaware Supreme Court's rejection of the remaining allegation in claim one was not contrary to *Jackson.*

In addition, the Delaware Supreme Court's decision did not involve an unreasonable application of *Jackson*. Brooks contends there was insufficient evidence to convict him of being in possession of a firearm during the commission of a felony because the guns were found in a handbag in the locked trunk of the Lumina and, therefore, were not in his immediate personal possession or accessible to him during the commission of the charged crimes. The Delaware Supreme Court rejected this argument and held that, "[v]iewed in the light most favorable to the State, there was sufficient evidence from which the jury could find that, at the time Brooks

9

committed the felony offenses charged, the guns were within his immediate reach and, therefore, were readily accessible." *Brooks*, 2007 WL 1470649 at *2.

In this case, the jury was presented with the following evidence tying Brooks to the car and the items found inside it. The Lumina was parked in front of Brooks' house. Police observed and videotaped Brooks driving the Lumina, and his fingerprints were found inside it. Police also observed Brooks carrying the bag that was found to contain the firearms and cocaine. The jury was also presented with testimony from the "straw" purchaser of three of the four handguns at issue in Brooks' case.

In Delaware, to show possession of a firearm during the commission of a felony, the State must show accessibility to the weapon during the commission of the crime, not necessarily that the weapon was accessible to the defendant when found by the police. *See Kornbluth v. State*, 580 A.2d 556, 561 (Del. 1990). After considering the aforementioned evidence in a light most favorable to the State, the court concludes that a rational trier of fact could have found Brooks guilty of possession of a firearm during the course of a felony beyond a reasonable doubt. The guns and drugs were all found in the same location, in a handbag in the trunk of the Lumina, thus establishing the "required nexus" between weapons and the continuing crime of drug trafficking. *See Gardner v. State*, 567 A.2d 404, 413 (Del. 1989). Therefore, the Delaware Supreme Court's denial of the instant claim involved a reasonable application of *Jackson*. The court also concludes that the Delaware Supreme Court's decision involved a reasonable determination of the facts in light of the evidence presented.

Accordingly, the court will deny claim one for failing to satisfy the requirements of § 2254(d).

## B. Claim Two: Prosecutorial Misconduct

In claim two, Brooks contends that the prosecutor engaged in misconduct by: using the word "I" in his opening statement; eliciting testimony that Brooks was a "target" and the narcotics officer was "familiar" with him; and referring to Brooks as a "drug dealer" during his closing argument. Brooks presented this claim to the Delaware Supreme Court on direct appeal. However, after noting that defense counsel did not object to the alleged prosecutorial misconduct during the trial, the Delaware Supreme Court only reviewed the claim for plain error pursuant to Delaware Supreme Court Rule 8. *See Brooks*, 2007 WL 1470649, at \*3. By applying the procedural bar of Delaware Supreme Court Rule 8, the Delaware Supreme Court articulated a "plain statement" under *Harris v. Reed*, 489 U.S. 255, 263-4 (1984) that its decision to deny claim two rested on state law grounds. This court has previously held that Rule 8 is an independent and adequate state procedural rule precluding federal habeas review absent a showing of cause and prejudice. *See Campbell v. Burris,* 515 F.3d 172, 182 (3d Cir. 2008) (Rule 8). As such, the court cannot review the merits of claim two absent a showing of cause and prejudice.

Brooks attempts to establish cause for his procedural default of claim two by blaming defense counsel for failing to object to the alleged prosecutorial misconduct during his trial. However, Brooks did not present an ineffective assistance of counsel claim based on counsel's failure to object to prosecutorial misconduct in his state collateral proceeding or in his post-conviction appeal. Consequently, this particular ineffective assistance of counsel claim is itself procedurally defaulted, *See* Del. Super. Ct. Crim. Rule 61(i)(2), and cannot excuse Brooks' procedural default of his prosecutorial misconduct claim. *See Edwards v. Carpenter*, 529 U.S. 446, 453-54 (2000).

11

Brooks does not assert any other cause for his default of claim two. In the absence of cause, the court will not address the issue of prejudice. However, the court acknowledges that Brooks' "motion to amend," which asserts a new claim that the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) because it failed to inform the defense about the scandal that was occurring at Delaware's Office of the Medical Examiner during Brooks' trial, could be construed as an attempt to demonstrate new reliable evidence triggering the miscarriage of justice exception to the procedural default doctrine. This attempt is unavailing. The Delaware State Police and the Delaware Department of Justice issued a preliminary report in June 2014 regarding the "systemic operational failings of the [Controlled Substances Unit of the DME's Office]" revealing "51 pieces of potentially compromised evidence at the CSU, stemming from 46 cases **between 2010 and 2013.**" *Biden: Investigation of State Medical Examiner's Drug Lab Reveals Systemic Failings, Urgent Need for Reform*, Dep't of Justice, Att'y Gen.'s Website (June 19, 2014), http://news.delaware.gov/ (emphasis added). Brooks committed the offenses for which he was convicted in 2005, well before the alleged "drug lab" misconduct that occurred from 2010 to 2013. As such, Brooks' instant allegation does not warrant excusing his procedural default of claim two under the miscarriage of justice exception.

Accordingly, the court will deny claim two as procedurally barred.

**C. Claim Three: Trial Court Never Ruled on Motion to Suppress Brooks' Police Statement**

Brooks contends that his post-arrest statement he made to police was taken in violation of his *Miranda* rights, because the police continued to question him even after he invoked his Fifth Amendment rights. Prior to trial, Brooks filed a motion to suppress that statement, and a hearing was scheduled. *See Brooks*, 2007 WL 1470649, at *4. However, before the hearing occurred,

the State informed the trial court and defense counsel by letter that it would not present the statement in its case-in-chief. Based on that representation, the trial court assumed without deciding that the statement was obtained in violation of Brooks' *Miranda* rights and concluded that a hearing was not necessary at that time. The trial court specifically noted that the questions of voluntariness and trustworthiness "will be decided if and when the defendant should testify at trail." *Id.* at \*4 n. 24. The State did not present the statement during its case-in-chief, and Brooks did not testify during the trial.

Now, in claim three, Brooks asserts that the trial court erred by not ruling on his motion to suppress his police statement prior to the start of the trial. He contends that the failure to rule on the suppression motion left him unsure as to whether the statement could be used for impeachment purposes which, in turn, prevented him from making a knowing decision about whether he should testify. Brooks presented this argument on direct appeal, and the Delaware Supreme Court rejected it as meritless. Therefore, habeas relief for claim three will only be warranted if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law.

The court has not found any Supreme Court cases holding that a trial court must make a pre-trial decision regarding the voluntariness of a defendant's custodial statement in order to avoid infringing upon the defendant's right to testify. Notably, the Supreme Court only requires that the decision regarding the voluntariness of a police statement be made by the trial court sometime prior to the statement's admission to the jury. *See Jackson v. Denno*, 378 U.S. 368, 395-96 (1964) ("It is both practical and desirable that in cases to be tried hereafter a proper determination of voluntariness be made prior to the admission of the confession to the jury which is adjudicating guilty or innocence."). Given the absence of any Supreme Court precedent

13

requiring a pre-trial decision for a motion to suppress an allegedly involuntary police statement when that statement is not admitted during trial, Delaware Supreme Court's denial of claim three cannot be said to be contrary to, or an unreasonable application of, clearly established Federal law under § 2254(d)(1). *See Wright v. Van Patten*, 552 U.S. 120, 126 (2008) ("because our cases give no clear answer to the question presented, let alone one in Van Patten's favor, it cannot be said that the state court unreasonably applied clearly established Federal law."). Therefore, the court will deny claim three as meritless.

### D. Claim Four: Erroneous Habitual Offender Status

In claim four, Brooks contends that the State failed to present sufficient evidence to support the trial court's determination that he was a habitual offender because the State did not file any certified records of his prior convictions. To the extent Brooks is arguing that his habitual offender status was imposed in violation of Delaware's sentencing guidelines or statutes, the claim is not cognizable on federal habeas review. *See Cooper v. Carroll*, 2007 WL 4168209, at *7 (D. Del. 2007); *Johnson v. Rosemeyer*, 117 F.3d 104, 109 (3d Cir. 1997) ("[A] state court's misapplication of its own law does not [raise] a constitutional claim."). To the extent the court should view the instant claim as asserting a cognizable due process violation, it does not warrant relief. On direct appeal, the Delaware Supreme Court denied claim four as factually baseless because the State provided unambiguous documentary evidence to support its motion to declare Brooks an habitual offender, as well as expert testimony. *See Brooks*, 2007 WL 12470649, at *4. Brooks has not provided any clear and convincing evidence to rebut that factual conclusion. Therefore, he has failed to satisfy § 2254(d)(1) or (2).

### E. Claim Five: Defense Counsel Failed to Conduct Supplemental *Voir Dire* of Juror No. 3

During the course of the trial, Juror No. 1 was excused after he disclosed to the trial court that he was uncomfortable remaining on the jury because he recognized trial spectators. Juror No. 1 also informed the trial court that, when he saw the familiar faces in the court room, he stated to Juror No. 3, "oh man this ain't gonna work." *Brooks*, 2011 WL 494770 at *4. The trial court provided defense counsel with the opportunity to *voir dire* Juror Number Three about any potential interactions that occurred with Juror Number One. After conferring with Brooks, defense counsel informed the trial court that the defense did not wish to separately question Juror Number Three. *Id.*

In claim five of this proceeding, Brooks contends that defense counsel provided ineffective assistance by failing to seek additional *voir dire* for Juror Number Three. On post-conviction appeal, the Delaware Supreme Court affirmed the Superior Court's denial of this argument as meritless.[4] As a result, habeas relief will only be available if the Delaware state court decisions were either contrary to, or involved an unreasonable application of, clearly established federal law.

The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first

---

[4]The Superior Court was the last state court to adjudicate the merits of all but one of Brooks' ineffective assistance of counsel claims (the one exception is Brooks' claim regarding counsel's failure to request a *Bland* instruction, discussed later in this opinion). However, the Delaware Supreme Court affirmed the Superior Court's denial of all of Brooks' other ineffective assistance of counsel claims (except for the one involving the *Bland* instruction, which it reversed) on the basis of the Superior Court's "well-reasoned opinion." *See Brooks*, 40 A.3d at 355. Therefore, the Delaware Supreme Court's decision with respect to all of Brooks' ineffective assistance of counsel claims constitutes an adjudication on the merits.

*Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260 (3d Cir. 1991); *Dooley v. Petsock*, 816 F.2d 885, 891-92 (3d Cir. 1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

Turning to the first prong of the § 2254(d)(1) inquiry, the court notes that the Delaware state courts properly identified *Strickland* as governing Brook's instant ineffective assistance of counsel contention. As such, the Delaware Supreme Court's decision was not contrary to clearly established federal law.

The court must also determine if the Delaware Supreme Court reasonably applied *Strickland* to the facts of Brooks' case. *See Harrington*, 562 U.S. at 105-06. When performing this inquiry, the court must review the Delaware Supreme Court's decision with respect to Brooks' ineffective assistance of counsel claims through a "doubly deferential" lens. *Id.* "[T]he question is not whether counsel's actions were reasonable, [but rather], whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

16

After reviewing Brooks' instant argument in context with the record, the court concludes that the Delaware state courts reasonably applied *Strickland* in denying claim five. For instance, when defense counsel declined the trial court's offer to conduct additional *voir dire* of Juror Number Three, defense counsel stated that he was "trying to decide if [such additional *voir dire* of Juror Number Three] is going to raise a flag that doesn't need to be raised." *Brooks*, 2011 WL 494770, at *4. Additionally, in his Rule 61 affidavit, defense counsel explains that he "did not wish for Juror Number Three to infer from the questioning that there was a reason to fear the people in the courtroom." *Id.* As explained by the Superior Court when denying Brooks' Rule 61 motion, these statements demonstrate that defense counsel's decision to not conduct an additional *voir dire* of Juror Number Three constituted a reasonable "strategic choice, made after considering the alternative and the respective costs and benefits." *Brooks*, 2011 WL 494770, at *4. Brooks has not presented, and the court has not discerned, any reason to question that defense counsel's decision fell within the wide range of reasonable professional assistance. Therefore, viewing the Delaware Supreme Court's decision through a doubly deferential lens, the court concludes that it reasonably applied *Strickland* in affirming the Superior Court's denial of claim five.

Accordingly, the court will deny claim five for failing to satisfy § 2254(d).

### F. Claim Six: Defense Counsel Failed to Present a Defense

Next, Brooks contends that defense counsel's failure to present a "defense case" amounted to ineffective assistance. Specifically, Brooks contends that he had originally planned on testifying, and that defense counsel's failure to fully explain the implications of his decision to not testify rendered any "decision" to not testify unknowing, unintelligent, and involuntary. Brooks also contends that defense counsel should have called the subpoenaed witness (Terrance

17

Waters) who sold the Lumina to Epps to testify, because Waters would have testified how and by whom the Lumina was used. According to Brooks, defense counsel decided not to present the aforementioned evidence solely as an attempt to prevent the State from introducing pre-marked exhibits it had inadvertently failed to introduce formally prior to the defense resting its case. The trial court ultimately admitted the evidence after finding that the State's error was a "ministerial oversight." *See Brooks*, 2011 WL 494770, at \*5.

The Delaware Superior Court denied the arguments in claim six as meritless during Brooks' Rule 61 proceeding, and properly identified *Strickland* as the applicable Supreme Court precedent. Therefore, Brooks will only be entitled to federal habeas relief if the Delaware Supreme Court unreasonably applied *Strickland* in affirming the Superior Court's denial of this claim.

The record belies Brooks' contention that defense counsel's actions infringed upon his right to testify. First, in his Rule 61 affidavit, defense counsel explains that Brooks informed him prior to trial, and again during the trial, that he (Brooks) was not going to testify. (D.I. 15, App. to Brooks' Supp. Mem. in *Brooks v. State*, No. 415,2008, at A-65) Second, and perhaps more significantly, the trial court conducted a thorough colloquy with Brooks concerning his choice not to testify, and confirmed that Brooks understood the ramifications of his decision to exercise his right not to testify. (D.I. 15, App. to Brooks' Supp. Memo. in *Brooks v. State*, No. 415,2008, at A-175) Specifically, the trial court confirmed that Brooks understood the decision to not testify was his alone, that he had discussed his right to testify with defense counsel, that he could not return at some subsequent point in time and allege that he was prevented from testifying, and that he was knowingly, intelligently, and voluntarily waiving his right to testify. *Id.* This colloquy demonstrates that Brooks voluntarily, knowingly, and intelligently waived his

18

right to testify. Thus, defense counsel's "failure" to call Brooks as a witness did not constitute ineffective assistance.

As for Brooks' contention that counsel rendered ineffective assistance by failing to call Waters to testify, the court notes that "we presume that counsel acted strategically in deciding not to call certain witnesses, and the [petitioner] bears the burden of rebutting that presumption." *Mitchell v. Grace*, 287 F. App'x 233, 235 (3d Cir. 2008). Here, Brooks' conclusory assertions regarding defense counsel's alleged error fail to rebut this presumption. Since Rose Epps was the registered owner of the Lumina, Waters' proffered testimony that Epps often drove the Lumina had minimal exculpatory value. Additionally, even though defense counsel strenuously argued that the State should not be allowed to enter its exhibits into evidence after the defense rested its case, defense counsel did not base his decision to not call Waters as a witness on the State's oversight. As defense counsel explains in his Rule 61 affidavit, counsel would have rested his case when he did even "if the State had not failed to move into evidence its exhibits." (D.I. 15, App. to Brooks' Supp. Memo. in *Brooks v. State*, No. 415,2008, at A-65) Thus, after reviewing the Delaware Supreme Court's decision through the doubly deferential lens applicable on habeas review and in context with the aforementioned record, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in holding that defense counsel's failure to call Waters as a witness did not amount to constitutionally ineffective assistance.

Accordingly, the court will deny claim six.

### G. Claim Seven: Defense Counsel Failed to Investigate Fingerprint Evidence

During Brooks' trial, Detective DiNardo testified that Brooks' fingerprint was found on the rear view mirror the Lumina, and Detective Murphy testified that Brooks' fingerprint was

19

found on the interior rear passenger window. However, unidentified fingerprints that were found on the exterior of the Lumina were never turned over to the defense. (D.I. 113 at 23)

In claim seven, Brooks complains that State did not turn the unidentified prints over to the defense, and that defense counsel did not retain an expert to determine if those prints could be matched to any individuals. According to Brooks, the unidentified fingerprint evidence was significant to show that he did not have "dominion and control" over the Lumina which, in turn, would have demonstrated that the drugs and guns in the trunk of the Lumina could have belonged to someone else. He also contends that, if defense counsel had attempted to compel the production of the unidentified fingerprints and if the State had failed to produce them, then defense counsel could have sought an instruction pursuant to *Deberry v. State*, 457 A.2d 744, 754 (Del. 1983) ("*DeBerry* instruction").[5]

The Superior Court denied the instant arguments for failing to satisfy the properly identified *Strickland* standard. Therefore, in order to obtain federal habeas relief, Brooks must show that the Delaware Supreme Court's affirmance of that decision was based on an unreasonable application of *Strickland*.

During the trial, the following evidence was introduced to demonstrate that Brooks had dominion and control over the Lumina: (1) a surveillance recording showed Brooks carrying the bag containing the drugs and guns found in the Lumina trunk; (2) testimony from a "straw" purchaser that he bought three of the four guns from Brooks; and (3) testimony that Brooks' fingerprints were found on two separate locations inside the Lumina. In his Rule 61 affidavit,

---

[5] A *Deberry* instruction is a jury instruction that requires the jury to infer that, if the State failed to preserve potentially exculpatory evidence, such evidence would in fact have been exculpatory. *See, e.g., Lunnon v. State*, 710 A.2d 197, 199 (Del. 1998) ("The remedy for failure to preserve potentially exculpatory evidence is a missing evidence instruction commonly referred to as a *Lolly* or *Deberry* instruction. This instruction requires that had the evidence been preserved, it would have been exculpatory to the defendant.").

defense counsel explains that, although he knew that the police had recovered fingerprints from the Lumina's exterior that did not belong to Brooks or his co-defendant, he did not have his private investigator attempt to determine the identity of the person belonging to those prints because the police surveillance recordings showed that Brooks driving the Lumina. (D.I. 15, App. to Brooks' Supp. Memo. in *Brooks v. State*, No. 415,2008, at A-65)

As the State argued on post-conviction appeal, the unidentified fingerprints on the exterior of the Lumina could have been left by anybody. (D.I. 15, State's Ans. Supp. Mem. In *Brooks v. State*, No. 415,2008 at 6) When this possibility is considered in conjunction with the fact that no unidentified fingerprints were found on the interior of the Lumina, and also in conjunction with the substantial independent evidence indicating that Brooks had control over the Lumina, the court cannot conclude that defense counsel's decision to forego investigating the unidentified fingerprints was objectively unreasonable.

Moreover, even if defense counsel's failure to investigate the unidentified fingerprints found on the outside of the Lumina was deficient, the fact that there was significant independent evidence of Brooks' dominion and control over the Lumina precludes Brooks from demonstrating a reasonable probability that the outcome of his trial would have been different but for counsel's failure to pursue a further investigation of the unidentified fingerprints.[6] Accordingly, the court will deny claim seven for failing to satisfy § 2254(d).

### H. Claim Eight: Defense Counsel Failed to File a *Flowers* Motion

Next, Brooks contends that counsel's failure to file a *Flowers* motion to determine the identity and veracity of the confidential informant amounted to ineffective assistance. Although

---

[6]The court will not address Brooks' speculative and hypothetical contention that defense counsel could have sought a *DeBerry* instruction if he had requested the unidentified fingerprints and the State failed to produce them for the simple reason that defense counsel did not request the unidentified fingerprints.

21

Brooks presented this argument to the Superior Court in his Rule 61 motion, he did not present the claim to the Delaware Supreme Court on post-conviction appeal. (D.I. 15, Brooks' Supp. Mem. in *Brooks v. State*, No. 415,2008, at 3 n.1 ("Claim 4 (failure to file a *Flowers* motion) is withdrawn as Mr. Brooks accepts the trial court's rationale for its denial.")) At this juncture, Delaware Superior Court Criminal Rule 61(i) would bar him from presenting this claim in a new Rule 61 proceeding in the Delaware state courts. Consequently, the court must treat claim eight as exhausted but procedurally defaulted, which means that it cannot review the claim's merits unless Brooks demonstrates cause and prejudice, or a miscarriage of justice.

Brooks does not assert, and the court cannot discern, any cause for his failure to include this claim to the Delaware Supreme Court in his post-conviction appeal. In the absence of cause, the court will not address the issue of prejudice. Moreover, Brooks has not demonstrated that his procedural default should be excused in order to avoid a miscarriage of justice, because he has not provided new reliable evidence of his actual innocence.

Accordingly, the court will deny claim eight as procedurally barred.

## I. Claim Nine: Defense Counsel Failed to Request a *Bland* Instruction on Accomplice Testimony

During the trial, the State presented the testimony of Brooks' co-defendant, Epps, who lived with Brooks. Epps' testimony connected Brooks to the cocaine and three of the four firearms seized from the Lumina. Defense counsel did not request, and the trial court did not give, a *Bland v. State*, 263 A.2d 286 (Del.1970) jury instruction, which instructs the jury regarding credibility concerns that must be considered when weighing accomplice testimony.

In claim nine, Brooks asserts that trial counsel's failure to request a *Bland* instruction regarding accomplice testimony constituted ineffective assistance of counsel. Brooks presented

22

this claim to the Delaware Supreme Court on appeal of the denial of his amended postconviction motion. After consolidating Brooks' postconviction appeal with another case on direct appeal and holding argument *en banc*, the Delaware Supreme Court established a new rule requiring trial judges to provide a specific accomplice liability to the jury in every case in which a witness who claims to be an accomplice testifies. *See Brooks v. State*, 40 A.3d at 350 (overruling prior precedent and "replac[ing] this legal thicket with a clear path for trial judges to follow").

More specifically, with respect to Brooks' claim of ineffectiveness of defense counsel, the Delaware Supreme Court found defense counsel's performance to be deficient. *Id.* at 354. The Delaware Supreme Court also concluded that defense counsel's failure to request a *Bland* accomplice testimony instruction caused prejudice under *Strickland* with respect to Brooks' conviction for second degree conspiracy. The Delaware Supreme Court explained:

> To prove conspiracy, the State must, of course, prove an agreement between Brooks and Epps. No evidence of an agreement exists aside from Epps' testimony.

*Brooks*, 40 A.3d at 355. As a result of this conclusion, the Delaware Supreme reversed the Superior Court's denial of Brooks' ineffective assistance of counsel claim with respect to his second degree conspiracy conviction and reversed his conviction for second degree conspiracy, and remanded that conviction back to the Superior Court. *Id.* After this remand, the State entered a *nolle prosequi* on the second conspiracy charge, and the Superior Court entered a modified sentence order omitting the sentence for second degree conspiracy.

Notably, however, the Delaware Supreme Court held that defense counsel's failure to request a *Bland* instruction did not cause prejudice with respect to any of Brooks' other convictions, because Brooks failed to "demonstrate a reasonable probability that the jury would have decided differently had it heard the *Bland* instruction. Even if the jury were told to exercise

great caution regarding Epps' testimony, the large quantity of corroborating evidence would

satisfy a jury, even one that deliberates with great caution." *Id.* at 354-55. The Delaware

Supreme Court explained:

> The State did present a large quantity of evidence, aside from accomplice
> testimony, tying Brooks to the car and therefore to the materials inside it. To
> start with, the car was parked in front of Brooks' house. Police observed, and
> even videotaped, Brooks driving the car, and police found his fingerprints inside
> it. Police also observed Brooks carrying the bag that contained the guns and the
> crack cocaine. That bag was found in Brooks' car in front of his house. Other
> witnesses testified that Brooks purchased weapons from them. Independent
> evidence corroborated that the car, the bag, and the guns belonged to Brooks.

> That corroborating evidence suffices to support a denial of Brooks' motion to
> set aside all his convictions except Conspiracy Second Degree. The presence of
> crack cocaine in Brooks' car supported his convictions for Trafficking, for
> Possession with Intent to Distribute, and for Maintaining a Vehicle for Keeping
> a Controlled Substance. The guns in the bag supported Brooks' four convictions
> for Possession of a Firearm by a Person Prohibited and Possession of a Firearm
> During the Course of a Felony. The digital scale in the trunk supported his
> conviction for Drug Paraphernalia. The presence of the guns in the car,
> suggesting Brooks owned the guns and therefore also the ammunition in the
> house he leased, supported his conviction for Possession of Ammunition by a
> Person Prohibited.

*Brooks,* 40 A.2d at 355. As a result, the Delaware Supreme Court affirmed the Superior Court's

denial of the ineffective assistance/*Bland* instruction claim with respect to Brooks' remaining

convictions (trafficking in cocaine, possession of a firearm during the commission of a felony,

possession with intent to distribute, possession of drug paraphernalia, possession of a deadly

weapon by a person prohibited, possession of ammunition by a person prohibited, and

maintaining a vehicle). *Id.*

Although not entirely clear, claim nine appears to be challenging the Delaware Supreme

Court's holding that defense counsel's failure to request a *Bland* instruction did not cause

prejudice with respect to Brooks' remaining convictions and, therefore, his other convictions

24

should have been reversed.[7] This challenge, however, is unavailing. Brooks has offered nothing in this proceeding to demonstrate a reasonable probability that the jury would not have found him guilty of the other offenses for which he was convicted if it had been given a *Bland* instruction. Given the independent, substantial corroborating evidence supporting Brooks' remaining convictions that was presented to the jury, and viewing the Delaware Supreme Court's decision through a doubly deferential lens, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in affirming the Superior Court's denial of the instant ineffective assistance of counsel claim with respect to Brooks' remaining convictions.

Accordingly, the court will deny claim nine.

## J. Claim Ten: Jury Instructions Regarding the Word "Possession"

In claim ten, Brooks contends that his due process rights were violated by a confusing and misleading jury instruction regarding the term "possession" with respect to Brooks' charge for possession of a firearm during the commission of a felony ("PFDCF"). More specifically, Brooks contends

> The thorny factual issue was that the guns and drugs were found in the same place: the trunk of the Lumina. The jury was instructed on trafficking that possession within a car was sufficient for constructive possession. Due to the inartful and confusing six definitions of possession (four by reference to other definitions), it was absolutely crucial for [defense] counsel to ensure that the jury was instructed that possession applied differently to the guns and the drugs, even though they were found in the same bag in the trunk of the Lumina.

(D.I. 2-2 at 45-46) Brooks also contends that trial counsel was ineffective for failing to request a more specific jury instruction on the issue of possession and by failing to seek an omnibus

---

[7]Brooks' intent with respect to claim nine is not entirely clear because he supports his argument with same amended Rule 61 motion (dated April 30, 2010) that he submitted during the first remand to the Superior Court which, as explained in the Opinion, resulted in the reversal of his conviction for second degree conspiracy and in a modified sentencing order omitting any sentence for second degree conspiracy.

instruction clarifying the definitions of possession as applied to the firearms and cocaine found in the trunk of the Lumina. Brooks presented these arguments to the Superior Court in his amended Rule 61 motion during the first remand, and the Superior Court denied them as meritless. The Delaware Supreme Court affirmed that decision. As such, Brooks will only be entitled to relief if the Delaware Supreme Court's decision was contrary to, or an unreasonable application of, clearly established federal law.

Pursuant to *Estelle v. McGuire*, 502 U.S. 62 (1991) and its progeny, in order to establish a due process violation caused by a jury instruction, a petitioner must show that the instruction was ambiguous and that "there was a reasonable likelihood that the jury applied the instruction in a way that relieved the State of its burden of proving every element of the crime beyond a reasonable doubt." *Waddington v. Sarausad*, 555 U.S. 178, 190-91 (2009). Moreover,

> [i]n making this determination, the jury instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. Because it is not enough that there is some "slight possibility" that the jury misapplied the instruction, the pertinent question is whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.

*Waddington*, 555 U.S. at 191 (internal citations and quotations omitted).

The disputed instruction in this case is set forth below:

> By possession, I do not mean merely that the firearm may have been in the area or the vicinity of the defendant so that it might have been taken possession of if the defendant wanted to do so. Rather, in order for the defendant to be found guilty of possession of a firearm, as that word is used in the statute, **you must find that the firearm was in the immediate personal possession or under the immediate control of the defendant so that it was physically available or accessible during the commission of the crime.**

*Brooks*, 2011 WL 494770, at *11 (emphasis added).

During Brooks' Rule 61 proceeding, the Superior Court explained that the trial court's instruction with respect to possession was legally correct under Delaware state law. *See Brooks*,

2011 WL 494770, at *11. Brooks also concedes that the instruction constituted a correct statement of Delaware law. The Superior Court further held that the jury instruction was not confusing or ambiguous, explaining

> [t]he issue of possession and control was correctly addressed in the disputed jury instruction. When considering the language of this specific instruction and the jury instruction as a whole, it is clear that the instructions were reasonably informative and not misleading, judged by common practices and standards of verbal communication. Different legal standards regarding "possession" applied to certain offenses herein and necessitated that the Court provide variable definitions of "possession" in the jury instructions; this was an inherent consequence of [Brooks'] instant charges, rather than a ground for postconviction relief.

*Brooks*, 2011 WL 494770, at *11. For the following reasons, the court concludes that Brooks has failed to demonstrate that the Delaware Supreme Court's affirmance of the Superior Court's decision warrants relief under § 2254(d).

Brooks was charged with numerous possession crimes involving drugs and weapons, which may be divided into two classes: (1) the general possession crimes, actual or construction, such as possession of drugs, drug paraphernalia, and firearms by a person prohibited; and (2) possession of firearms during the commission of a felony, requiring the additional elements of availability and accessibility during the commission of the specified felonies. *See generally Lecates v. State*, 987 A.2d 413, 419-21 (Del. 2009); *see also Brooks*, 2011 WL 494770, at *11 * (explaining that "different legal standards regarding 'possession' applied to certain offenses herein."). Given Brooks' various charges, the trial court instructed the jury on both definitions of "possession." The trial court gave the "general" possession instruction when reviewing the elements of the trafficking in cocaine charge, which was the first offense that the trial court defined for the jury. (D.I. 15, State's Ans. Supp. Mem. in *Brooks v. State*. No. 415,2004, at 9) The trial court referred the jury back to this definition for all subsequent general possession

27

crimes. *Id.* However, when the trial court came to the four counts of PFDCF, it gave the more specific possession instruction applicable to them, namely, that the firearm had to be "in the immediate personal possession or under the immediate control of the defendant so that it was physically available or accessible during the commission of the crime." *Brooks*, 2011 WL 494770, at *10-11.

Based on the foregoing, the court concludes that the Delaware state courts reasonably held that the trial court's instruction regarding possession was not ambiguous. In addition, Brooks has not shown a reasonable likelihood that the jury applied the instruction in a manner that relieved the State of its burden of proof with respect to possession. Therefore, Brooks has failed to demonstrate that the trial court's instruction so infected the entire trial that the resulting convictions violate due process.

Given its conclusion that the Delaware state courts acted reasonably in holding that the instructions on possession were unambiguous when considered as a whole, the court also finds that defense counsel did not provide ineffective assistance by failing to seek more specific jury instructions on the issue of "possession" with respect to his charges for PDWDCF. Therefore, the court concludes that the Delaware Supreme Court reasonably applied *Strickland* in affirming the Superior Court's holding that defense counsel did not provide ineffective assistance by failing to seek a more specific jury instruction on possession.

Accordingly, the court will deny claim ten in its entirety.

### K. Claim Eleven: Cumulative Effect

Finally, Brooks contends that he is entitled to habeas relief because the cumulative effect of all the aforementioned claims prejudiced him. Given the court's determination that each of

Brooks' individual claims is meritless, his claim of cumulative error necessarily fails. Accordingly, the court will deny claim eleven as meritless.

## L. Pending Motion

While this case was pending, Brooks filed a motion to amend his petition with a claim that the State violated *Brady v. Maryland* by failing "to disclose [] that the drug evidence tracking system is inaccurate," as well as "evidence of government misconduct at the crime lab." (D.I. 17 at 4 -5) In short, Brooks wants to amend his petition with a claim that the State suppressed evidence of "crime lab corruption" in Delaware's Office of the Medical Examiner, and that the suppression of this evidence created a probability sufficient to undermine confidence in the outcome of his case. *Id.* at 8. The court presumes that Brooks is referring to a preliminary report issued by the Delaware State Police and the Delaware Department of Justice in June 2014 regarding the "systemic operational failings of the [Controlled Substances Unit of the DME's Office]" revealing "51 pieces of potentially compromised evidence at the CSU, stemming from 46 cases **between 2010 and 2013**," *Biden: Investigation of State Medical Examiner's Drug Lab Reveals Systemic Failings, Urgent Need for Reform*, Dep't of Justice, Att'y Gen.'s Website (June 19, 2014), http://news.delaware.gov/ (emphasis added).

The court will deny Brook's motion to amend. The *Brady* claim does not relate back to his original petition, because it is entirely new, and was asserted almost two full years after the State filed its answer, which is also well-after the expiration of AEDPA's limitations period. *See* Fed. R. Civ. P. 15(a),(c); *Mayle v. Felix*, 545 U.S. 644 (2005); *United States v. Duffus*, 174 F.3d 333, 336-37 (3d Cir. 1999) (finding that a new ineffective assistance of counsel claim asserted in a motion to amend after AEDPA's limitations period had already expired did not relate back to an ineffective assistance of counsel claim asserted in the original timely habeas petition); *U.S. v.*

*Thomas*, 221 F.3d 430, (3d Cir. 2000) ("Under Fed. R. Civ. P. 15(c), an amendment . . . clarif[ying] or amplif[ying] a claim or theory in the petition may, in the District Court's discretion, relate back to the date of the petition if and only if the petition was timely filed and the proposed amendment does not seek to add a new claim or to insert a new theory into the case"). As such, the *Brady* claim constitutes an untimely amendment to Brooks' original timely filed § 2254 petition.[8]

## IV. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* 3d Cir. L.A.R. 22.2 (2011). A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

The court has concluded that Brooks' petition fails to warrant federal habeas relief. The court is persuaded that reasonable jurists would not find this conclusion to be debatable. Therefore, the court will not issue a certificate of appealability.

## V. CONCLUSION

For the reasons stated, Brooks' petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied without an evidentiary hearing or the issuance of a certificate of appealability. An appropriate order shall issue

---

[8]Brooks' *Brady* claim also appears to be facially baseless. Brooks was convicted in 2005, and the alleged "crime lab misconduct" to which he refers occurred between 2010 and 2013.